897 So.2d 68 (2004)
Warren D. KENT, Jr.
v.
Sarah Ann Sullivan HOGAN, Eddie Lee Hogan and Travis Kentrell Washington.
No. 2003 CA 2424.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
Nelson D. Taylor, Baton Rouge, Counsel for Defendants/Appellants, Sarah Ann Sullivan Hogan & Eddie Lee Hogan.
Mack H. McCraney, Hammond, Counsel for Defendant/Appellant, Travis Kentrell Washington.
Jesse P. Lagarde, Amite, Counsel for Plaintiff/Appellee, Warren D. Kent, Jr.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
*69 GUIDRY, J.
The primary issue in this suit for specific performance is whether a contract to sell immovable property was formed between the parties. Concluding no such contract was perfected, we reverse the judgment in favor of plaintiff.

FACTS AND PROCEDURAL BACKGROUND
In August 2001, defendants, Sarah and Eddie Hogan, listed a 2-1/2 acre tract of land located in Tangipahoa Parish, Louisiana for sale through their real estate agent, Darita Richardson. On December 10, 2001, plaintiff, Warren Kent, Jr., offered to purchase the land for $52,500. After the Hogans indicated they were receptive to the offer, it was reduced to writing in a document labeled "Agreement To Purchase or Sell" (sometimes referred to as the "offer"), and was signed by Kent that day. By its terms, the offer expired at 3:00 p.m. on December 11, 2001, and contained the following language regarding deadlines: "Time is of the essence and all deadlines are final except where modifications, changes, or extensions are made in writing and signed by all parties."
Ms. Richardson scheduled a meeting for 2:00 p.m. on December 11 to present the Hogans with the written offer. When they failed to appear, she telephoned plaintiff's real estate agent, Nadine Lagarde, and asked if plaintiff would extend the offer. Ms. Lagarde contacted plaintiff, who agreed to a two-day extension.
On December 12, Ms. Richardson prepared a document labeled "Addendum To Agreement To Purchase or Sell" (hereinafter the "Addendum") that referenced the original offer, stating it was to remain binding and irrevocable until 3:00 p.m. on December 13. That afternoon she conveyed the original offer, together with the "Addendum," to the Hogans, who signed both documents sometime before 9:00 a.m. on December 13. Thereafter, at the request of Ms. Richardson, Ms. Lagarde met Mr. Hogan outside a restaurant near his home to pick up the documents. She then brought the documents to plaintiff's office, where he signed the "Addendum" sometime before 11:00 a.m.
Ms. Richardson picked up the two documents at Ms. Lagarde's office sometime after 3:00 p.m. on December 13, which was after the time for expiration provided in the "Addendum." Noticing that the Hogans had not dated or timed their signatures on the "Agreement to Purchase or Sell," she arranged to meet them later that afternoon to complete that information. Before leaving her office, she made copies of the documents. When the Hogans were given the "Agreement to Purchase or Sell" to date and time, one of them wrote the date and 4:48 p.m. on the document and refused to give it back to Ms. Richardson, because they had changed their minds about the sale.
It is unclear when plaintiff was informed of this development. In any event, a closing date of December 21, 2001, was set, but the Hogans failed to appear on either that date or on subsequent dates set for closing the sale. In January 2002, Mrs. Hogan's son from an earlier marriage, Travis Washington, contacted plaintiff's attorney, stating that he was the owner of a 1/3 interest in the property at issue, pursuant to a written act of donation from the Hogans. Although the donation was dated November 1, 2001, it was not filed in the conveyance records of Tangipahoa Parish until January 15, 2002.
On January 29, 2002, plaintiff filed the instant suit for specific performance of the "Agreement To Purchase or Sell," naming Sarah and Eddie Hogan as defendants. The petition also named Travis Washington *70 as a defendant, and requested that the donation to him from the Hogans be declared a simulation and canceled from the conveyance records. Following trial, the court rendered judgment in favor of plaintiff. The court concluded that, while the verbal extension of the offer was invalid because not in the requisite written form, the actions of the Hogans in signing the "Addendum" and "Agreement To Purchase or Sell" after the expiration of the original offer constituted a counteroffer to plaintiff. The court further concluded the counteroffer was accepted by plaintiff when he signed the "Addendum" on the morning of December 13, and that the acceptance was timely received (before 3:00 p.m. on December 13) by the Hogans when the signed documents came into the hands of Ms. Lagarde, who was acting as an assistant of Ms. Richardson, the Hogans' realtor. The court also found the purported donation to Mrs. Hogan's son was a simulated donation that was an attempt to circumvent the contract with plaintiff. Accordingly, the court rendered judgment in favor of plaintiff: (1) declaring him to be the owner of the property in dispute upon depositing into the court registry the sum of $52,500; and (2) declaring the donation from the Hogans to Travis Washington to be null and void. Finally, the court awarded disbursement from the proceeds in the court registry of $5,250 in realtor's fees, to be divided equally between the two realtors involved. Defendants have now appealed the trial court's judgment.

ASSIGNMENTS OF ERROR
1. The trial court erred in finding that a contract to sell property was perfected between Warren Kent and the Hogans.
2. The trial court erred in finding that the Act of Donation executed on November 1, 2001, was a simulation that was an attempt to circumvent the agreement to buy and sell.
3. The trial court erred in awarding realtor's fees to parties who were not parties to the lawsuit.

DISCUSSION
In their first assignment of error, defendants argue the trial court erred in concluding a contract to sell was formed between the parties. Specifically, they challenge the court's finding that the Hogans' untimely acceptance of the "Agreement to Purchase or Sell" on the morning of December 13, together with their signing of the "Addendum," constituted a counteroffer to sell the property to plaintiff.
A contract to sell is formed by the consent of the parties established through offer and acceptance. La. C.C. art.1927. See also 1 La. Prac. Real Est. § 9:3 (2000). In the instant case, La. C.C. art.1943 is pertinent because it provides that an acceptance of an offer that is not in accordance with the terms of the offer is deemed to be a counteroffer. The time limit named in plaintiff's original offer clearly was one of the terms of that offer. Thus, the trial court reasoned that, since the Hogans signed the "Addendum" purporting to change that particular term at the same time that they attempted to accept the original offer, their actions constituted a counteroffer because it was an acceptance not in accordance with the original offer. On appeal, defendants argue this interpretation of events "invent[ed] an intent of the parties regarding offer and acceptance that neither of them ever contemplated." However, we need not decide whether the trial court's conclusion was correct, because we do not believe a contract to sell was formed between the parties, even if the Hogans' actions are deemed to be a counteroffer to plaintiff.
*71 The acceptance of an irrevocable offer is effective only when it is received by the offeror within the time named in the offer. La. C.C. art. 1934 & Official Comment (b). The rationale for this requirement has been explained as follows:
The reason for that rule is that, when the offer is irrevocable, it is the offeror who finds himself at a disadvantage. Indeed, he is bound by the law not to revoke the offer upon the sole declaration of his will, which leaves him, so to say, at the mercy of the offeree, who may speculate on the advantage of accepting or not while the offeror is bound for a time even though circumstances subsequent to the offer show that the contract would no longer be advantageous for him.
* * *
Though it is quite clear that a written acceptance is received when it comes to the hands of the offeror or is otherwise in his possession that is not the only manner in which the reception of an acceptance can occur. Thus, an acceptance is received when it comes into the possession of a person authorized by the offeror to receive it, or when it is deposited in a place the offeror has indicated as the place where communications of that kind are to be deposited for him. (Footnotes omitted).
Saul Litvinoff, Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations, 47 La.L.R. 699, 729 (1987). Thus, for plaintiff's acceptance of the purported counteroffer to be effective, resulting in a perfected contract to sell, it must have been received by the Hogans (offerors) or a person authorized to receive it for them within the time named in the purported counteroffer, which was no later than 3:00 p.m. on December 13.
The record contains no specific evidence indicating the Hogans were notified of plaintiff's acceptance within that time. This may have been because the realtors believed the verbal extension of the original offer was valid, and continued to operate as though plaintiff was the offeror who must be given notice of acceptance. Regardless of the reason the Hogans were not given actual notice within the time named, the trial court believed the notice requirement was met when Ms. Lagarde secured plaintiff's signature on the "Addendum." The court reasoned that, since Ms. Lagarde picked up the documents from Mr. Hogan earlier that day at the request of the Hogans' realtor, Ms. Richardson, her receipt of plaintiff's acceptance was as effective as if Ms. Richardson herself had received it.
We disagree that Ms. Lagarde was a person authorized to receive notice of acceptance on behalf of the Hogans. No agency relationship existed between them because there was no agreement, explicit or implied, between Ms. Lagarde and the Hogans that authorized her to act for or represent them in any capacity with regard to their immovable property. See La. R.S. 9:3891(1). Further, although the trial court seemed to consider Ms. Lagarde to be a subagent of Ms. Richardson, she could not properly be considered as such because subagencies can be created only by written agreement. See La. R.S. 9:3898. Nor can she be deemed a dual agent of the parties for the same reason. See La. R.S. 9:3897A.
The record reflects that Ms. Lagarde had very limited contact with the Hogans at the time in question. She agreed to Ms. Richardson's request to pick up the documents strictly for the latter's convenience, since Ms. Lagarde lived closer to the Hogans *72 than Ms. Richardson did. Ms. Lagarde testified that, when she met Mr. Hogan, they merely introduced themselves and exchanged the documents, without any discussion of the proposed sale. Under these circumstances, the trial court erred in imputing Ms. Lagarde's knowledge of plaintiff's acceptance to the Hogans. Accordingly, since the record does not reflect that the Hogans were notified of or in possession of plaintiff's acceptance within the time named in the purported counteroffer, the acceptance was not effective and no contract of sale was formed between the parties. See La. C.C. art.1934.

CONCLUSION
For the reasons given, the judgment of the trial court ordering specific performance in favor of plaintiff is reversed. Further, those portions of the judgment ordering disbursement of realtor's fees and declaring the disputed donation from the Hogans to Travis Washington to be null and void are also reversed, since they were founded on the trial court's erroneous conclusion that a contract to sell existed between the parties. All costs of this appeal are to be paid by appellee, Warren Kent, Jr.
REVERSED AND RENDERED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
The clear language of LSA-C.C. art.1934 provides that an acceptance of an irrevocable offer becomes effective when received by the offeror. Additionally, the language of LSA-C.C. art.1938 states that a written acceptance is received when it comes into the possession of the addressee or of a person authorized by him to receive it. Finally, LSA-9:3897A and 9:3898 require that dual agency and subagency relationships in real estate transactions be in writing. Therefore, I must concur with the result reached by the majority.